Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Roberto Brito Díaz; Ángel Luis Sanabria Morales; Keila Colón Rivera; José C. Rodríguez Collazo; José Enrique Cruz Mercado; Nydia Luz Rivera Laporte; Marianita Palau; Carla Capalli Rosa; Ángel Torres y People Fort The Ethical Treatment of Animals (PETA)<br><br>      Recurridos<br><br>            v.<br><br>Bioculture Puerto Rico, Inc.; Estado Libre Asociado de Puerto Rico; Administración de Reglamentos y Permisos (ARPE); Departamento de Justicia; Junta de Calidad Ambiental (JCA); Departamento de Recursos Naturales y Ambientales (DRNA); Departamento de Agricultura; Compañía de Fomento Industrial (PRIDCO); Municipio de Guayama; Ing. José Mateo Colón; e Ing. Germán Torres Berríos<br><br>      Peticionarios | Certiorari<br><br>2012 TSPR 6<br><br>184 DPR ____ |

Número del Caso: CC-2011-929

Fecha: 10 de enero de 2011

Tribunal de Apelaciones:

        Región Judicial de Arecibo, Guayama y Utuado,
        Panel Especial XI

Juez Ponente:

        Hon. Luis G. Saavedra Serrano

Abogados de la Parte Peticionaria:

                Lcdo. Luis Sánchez Betances
                Lcdo. Jorge Martínez Luciano
                Lcdo. Emil Rodríguez Escudero

Abogados de la Parte Recurrida:

                    Lcdo. Ricardo F. Casellas
                    Lcdo. César T. Alcover Acosta
                    Lcdo. Manuel Pietrantoni Cabrera
                    Lcdo. Segundo Meléndez
                    Lcdo. José Juan Nazario

Materia:    Injuction Preliminar y Permanente y Remedios
            Provisionales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Roberto Brito Díaz; Ángel Luis Sanabria Morales; Keila Colón Rivera; José C. Rodríguez Collazo; José Enrique Cruz Mercado; Nydia Luz Rivera Laporte; Marianita Palau; Carla Capalli Rosa; Ángel Torres y People For The Ethical Treatment of Animals (PETA)<br><br>Recurridos<br><br>v.<br><br>Bioculture Puerto Rico, Inc.; Estado Libre Asociado de Puerto Rico; Administración de Reglamentos y Permisos (ARPE); Departamento de Justicia; Junta de Calidad Ambiental (JCA); Departamento de Recursos Naturales y Ambientales (DRNA); Departamento de Agricultura; Compañía de Fomento Industrial (PRIDCO); Municipio de Guayama; Ing. José Mateo Colón; e Ing. Germán Torres Berríos<br><br>Peticionarios | CC-2011-929 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de enero de 2012.

Examinada la *Solicitud de Reconsideración* y *la Solicitud de Celebración de Vista Oral* en el caso de epígrafe, se declaran ambas No Ha Lugar.

Notifíquese inmediatamente a las partes por teléfono, fax y por la vía ordinaria.

Lo acordó y ordena el Tribunal, y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un voto de conformidad, al cual se

unió el Juez Asociado señor Kolthoff Caraballo. El Juez Asociado señor Estrella Martínez emitió un voto de conformidad, al cual se unieron el Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez. La Jueza Asociada señora Pabón Charneco emitió un Voto Particular Disidente, al cual se unieron el Juez Asociado señor Rivera García y el Juez Asociado señor Feliberti Cintrón.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Roberto Brito Díaz; Ángel Luis Sanabria Morales; Keila Colón Rivera; José C. Rodríguez Collazo; José Enrique Cruz Mercado; Nydia Luz Rivera Laporte; Marianita Palau; Carla Capalli Rosa; Ángel Torres y People Fort The Ethical Treatment of Animals (PETA)<br><br>Recurridos<br><br>v.<br><br>Bioculture Puerto Rico, Inc.; Estado Libre Asociado de Puerto Rico; Administración de Reglamentos y Permisos (ARPE); Departamento de Justicia; Junta de Calidad Ambiental (JCA); Departamento de Recursos Naturales y Ambientales (DRNA); Departamento de Agricultura; Compañía de Fomento Industrial (PRIDCO); Municipio de Guayama; Ing. José Mateo Colón; e Ing. Germán Torres Berríos<br><br>Peticionarios | CC-2011-929 |

Voto de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES a la cual se une el Juez Asociado señor KOLTHOFF CARABALLO

En San Juan, Puerto Rico, a 10 de enero de 2012.

Una mayoría de los miembros de este Foro actúa correctamente en el día de hoy al no reconsiderar y

declarar no ha lugar una moción en que se solicita vista oral. Sin embargo, lo indicado en el voto disidente me obliga a expresarme de nuevo sobre el alcance del derogado Art. 31 de la Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 72(c) y lo resuelto en Fund. Surfrider y otros v. A.R.Pe., 178 D.P.R. 563 (2010). De esta forma, se coloca en justa perspectiva el derecho aplicable al caso que nos ocupa.

I

El Art. 31, íd., hoy derogado pero aplicable a esta controversia, establecía en lo pertinente, que una vez se apela la concesión de un permiso de construcción ante la Junta Apelativa sobre Construcciones y Lotificaciones (J.A.C.L.) "el organismo o funcionario de **cuya actuación se apela, suspenderá** todos los procedimientos ante sí, relativos a la actuación, **determinación**, o resolución **de la cual se apela**". (Énfasis nuestro.) En Fuertes, Guillermety v. A.R.Pe., 130 D.P.R. 971 (1992), se planteó que un permiso de construcción expedido por A.R.Pe. que se apeló ante la J.A.C.L. no se podía revocar "sin una vista previa debido a que constituía un derecho de propiedad". Íd., pág. 981. Al concluir que esa aseveración era incorrecta, esbozamos que

> una vez iniciada una apelación ante la Junta, los procedimientos ante A.R.Pe. **quedan paralizados**. A.R.Pe. **emitió erróneamente** el *Permiso de Construccion* el 23 de septiembre de 1988, antes de que transcurrieran los treinta

(30) días para apelar su resolución. Fuertes
apeló en tiempo. La decisión de A.R.Pe. **nunca
advino final y firme**.

Íd., pág. 982. (Énfasis nuestro y en el
original.)

Ese principio de derecho se ratificó en Plaza Las
Américas v. N & H, 166 D.P.R. 631, 654 (2005). En el caso
que nos ocupa, se apeló la concesión del permiso de
construcción dentro de los 30 días que el Art. 31, supra
disponía. Así, la eficacia del permiso quedó en suspenso.

Me reconforta que aunque tardara un mes desde que
atendió el recurso por primera vez, la disidencia aborde
al fin el alcance del Art. 31, íd. Sin embargo, es
incorrecto afirmar que el *injunction* que contemplaba la
ley se limitaba a paralizar la efectividad de los permisos
de construcción que se emitieron después que se solicitó
su revisión ante la J.A.C.L. Como vemos, hemos resuelto
reiteradamente que el Art. 28 de la Ley Núm. 76, supra, 23
L.P.R.A. sec. 72, también podía usarse para impedir que
continuara la construcción después de que el permiso
estaba bajo la revisión de la J.A.C.L., pues según el Art.
31, supra, la efectividad de ese permiso quedaba en
suspenso.

II

Por otro lado, los hechos que ocupan hoy nuestra
atención son distintos a los que se dieron en Fund.
Surfrider y otros v. A.R.Pe, supra. Así lo reconoce la

peticionaria Bioculture. Sin embargo, esta hace un análisis acomodaticio y desacertado en su escrito de reconsideración sobre la figura de la legitimación activa.

En particular, Bioculture señala que "no existe diferencia entre lo declarado por el señor Rodríguez Collazo con lo argüido por el señor Richter en Fundación Surfrider". Solicitud de Reconsideración, pág. 3. Peor aun, la parte peticionaria entiende que "la evidencia de daño y la participación que tuvo el Sr. Richter en el caso de Fundación Surfrider fue mayor a la ofrecida por el Sr. Rodríguez Collazo". Íd. Discrepo totalmente de ese raciocinio.

En Fund. Surfrider y otros v. A.R.Pe, supra, pág. 583, el señor Richter adujo que tenía problemas de distribución de agua y que entendía que ese problema se agravaría con el aumento de consumo que significaría la construcción del proyecto que impugnó. No trajo prueba al respecto. Se basó en una creencia suya sin base para sostenerla. Esos factores nos llevaron a resolver que el señor Richter carecía de legitimación activa. En específico, indicamos que

> el señor Richter alega que se verá afectado por la decisión administrativa ya que "entiende" que el alegado problema de distribución de agua se intensificará con la construcción del proyecto. Ésta es una alegación especulativa y conclusoria. Además, como no se alegó la ubicación de la residencia al predio del proyecto ni la proximidad, no podemos saber si

el sector donde está ubicada la residencia se
suple de la misma toma de agua que el proyecto.

Fund. Surfrider y otros v. A.R.Pe, supra, pág.
588.

Ahora bien, si contrastamos lo expuesto en Fund.
Surfrider y otros v. A.R.Pe, con este caso, es forzoso
concluir que el señor Rodríguez Collazo sí demostró
ostentar legitimación activa. En particular, el señor
Rodríguez Collazo demostró mediante una declaración
incontrovertida que sufrió un daño económico como
consecuencia del permiso de construcción concedido pues no
pudo vender su proyecto de viviendas colindante con la
finca de Bioculture. Su condición de colindante no está en
disputa, a diferencia del Sr. Richter en Fund. Surfrider.
Además, el daño probado no es especulativo. Por el
contrario, es claro, real, concreto y específico, tal como
Fund. Surfrider y otros v. A.R.Pe, supra, requiere. El
daño es personal e inminente, lo que lo cualifica para
obtener un *injunction* según el Art. 28, supra.

Además, se desprende de la transcripción de las
vistas evidenciarias que el colindante Rodríguez Collazo
contestó los pormenores del desarrollo de viviendas que
tenía propuesto en su propiedad a instancias de la
representación legal de Bioculture. Dicho de otro modo, la
legitimación activa del colindante Rodríguez Collazo se
demostró en el contrainterrogatorio que la representación
legal de Bioculture le realizó. Véase, Transcripción de

*Vista Evidenciaria de 9 de noviembre de 2009*, pág. 97-100. Entonces, no cabe hablar de testimonio acomodaticio (*self serving*).

No se puede perder de perspectiva que nos encontramos ante el testimonio bajo juramento de un testigo a quien el foro primario le creyó. Eso constituye evidencia directa. Regla 110(D) de Evidencia, 32 L.P.R.A. Ap. VI; S.L.G. Rivera Carrasquillo v. A.A.A., 177 D.P.R. 345, 357 (2009); Ramírez Ferrer v. Conagra Foods PR, 175 D.P.R. 799, 811 (2009); Trinidad v. Chade, 153 D.P.R. 280 (2001). Es norma reiterada que "un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad del foro primario a menos que este último haya incurrido en error manifiesto, pasión, prejuicio o parcialidad". S.L.G. Carrasquillo v. A.A.A., 177 D.P.R. 345, 361 (2009). Véase, además, Flores v. Soc. de Gananciales, 146 D.P.R. 45, 49 (1998); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975). Por eso, rechazo la invitación que se nos hace en la moción de reconsideración para que, como los proverbiales tres monitos, no oigamos, veamos ni hablemos de la prueba que desfiló en el Tribunal de Primera Instancia y que establece el daño concreto, personal y real del corecurrido Rodríguez Collazo.

III

Todo lo anterior me lleva a concluir que no procede reconsiderar. Para ello no hace falta una vista oral. Los

beneficios de una vista oral para ilustrar al Tribunal y esclarecer la controversia son indudables. Sin embargo, su valor se desvanece después que el Tribunal decidió. Por eso, me parece tardía la solicitud de vista oral que la parte peticionaria nos hace en la etapa de la reconsideración.

En fin, he discutido el marco jurídico aplicable a la controversia que nos atañe hoy. Los precedentes están claros. Por eso, considero que llegar a una solución contraria tendría el efecto de trastocar "la confianza en nuestras instituciones y en nuestro ordenamiento jurídico, el cual debe aspirar a garantizar un ambiente de uniformidad y consistencia en la aplicación del Derecho". Brito Díaz et al. v. Bioculture et al., res. el 9 de diciembre de 2011, 2011 T.S.P.R. 185, 2011 J.T.S. 190, 183 D.P.R. __ (2011), Voto particular disidente de la Jueza Asociada señora Pabón Charneco, al cual se unieron los Jueces Asociados señores Rivera García y Feliberti Cintrón, pág. 2.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Roberto Brito Díaz; Ángel Luis Sanabria Morales; Keila Colón Rivera; José C. Rodríguez Collazo; José Enrique Cruz Mercado; Nydia Luz Rivera Laporte; Marianita Palau; Carla Capalli Rosa; Ángel Torres; People for the Ethical Treatment of Animals (PETA)<br><br>    Recurridos<br><br>        v.<br><br>Bioculture Puerto Rico, Inc.; Estado Libre Asociado de Puerto Rico; Administración de Reglamentos y Permisos (ARPE); Departamento de Justicia; Junta de Calidad Ambiental (JCA); Departamento de Recursos Naturales y Ambientales (DRNA); Departamento de Agricultura; Compañía de Fomento Industrial (PRIDCO); Municipio de Guayama; Ing. José A. Mateo Colón; Ing. Germán Torres Berríos<br><br>    Peticionarios | CC-2011-929 | Certiorari |

Voto de conformidad emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ al cual se unen el Juez Presidente SEÑOR HERNÁNDEZ DENTON y la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ.

San Juan, Puerto Rico, a 10 de enero de 2012.

Estoy conforme con la determinación de una mayoría de este Tribunal de denegar las solicitudes de reconsideración y de vista oral, presentadas por Bioculture Puerto Rico, Inc. (Bioculture).

I.

En nuestro Voto de Conformidad del pasado 9 de diciembre, tuvimos la oportunidad de impartirle

consistencia a la jurisprudencia interpretativa del Art. 28 de la Ley Orgánica de A.R.Pe., Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71 *et seq.* (derogada).

En aquella ocasión, reafirmamos que el procedimiento establecido por el Art. 28, 23 L.P.R.A. sec. 72, es un mecanismo estatutario, independiente, especial, sumario y limitado que permite la paralización de las obras o usos que violen la ley. A.R.Pe. v. Rodríguez, 127 D.P.R. 793, 808-809 (1991).

En clara confirmación de que nuestro dictamen en nada priva de jurisdicción a la Rama Ejecutiva, reiteramos lo resuelto en A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 822 (1986), donde expresamos que la utilización de los procedimientos sumarios que buscan dar la debida protección a la salud y bienestar público, tal como el establecido en este articulado, no se circunscribe exclusivamente a situaciones de emergencia. Además, reiteramos que este mecanismo no desplaza la función administrativa, sino que **es un mecanismo provisional**. Plaza las Américas v. N & H, 166 D.P.R. 631, 647 (2005).

En el pasado, descartamos el planteamiento -reciclado en el caso ante nos- de que las doctrinas de jurisdicción primaria y de agotamiento de remedios administrativos impiden la concesión del remedio sumario del Art. 28. Ciertamente, la disponibilidad del procedimiento sumario establecido en el referido Art. 28 no está supeditada a las normas de jurisdicción primaria ni de agotamiento de

remedios administrativos. Véase, Mun. de Caguas v. AT & T, 154 D.P.R. 401, 415 (2001).

A pesar de esa realidad, los peticionarios nuevamente acuden en reconsideración obviando la naturaleza y los requisitos dispuestos en el Art. 28 para obtener el remedio contemplado en el mismo.

El propósito del Art. 28 es proveer un mecanismo sumario rápido, independiente y complementario. A.R.Pe. v. Rodríguez, *supra*. Para llegar a la conclusión propuesta por Bioculture, tendríamos que pasar por alto que las órdenes de paralización solicitadas, al amparo del procedimiento especial de dicho articulado, **son un remedio independiente y diferente del interdicto tradicional**. Así bien, a diferencia del interdicto tradicional, el mecanismo que brinda el Art. 28 no surge de la equidad, sino que debe ser evaluado según la letra del mismo y su jurisprudencia interpretativa. Plaza las Américas v. N & H, *supra*, pág. 650; A.R.Pe. v. Rivera, 159 D.P.R. 429, 444-445 (2003); A.R.Pe. v. Rodríguez, *supra*. Bajo el Art. 28 **no se requiere alegación ni prueba de daños irreparables**, sino sólo la determinación de que el demandado ha violado las disposiciones de la ley. A.R.Pe. v. Rivera, *supra*.

El Art. 28 establece los criterios que efectivamente cumplieron los recurridos vecinos y colindantes del proyecto de Bioculture. Así lo comprobó nuestro análisis de la prueba. Me reafirmo en el contenido en mi Voto Particular previo. No es necesario abonar a una controversia en la que seis (6) miembros de este Tribunal

consideramos que los recurridos poseen legitimación para obtener el remedio interdictal especial alcanzado.

## II.

En nuestro Voto Particular tuvimos la oportunidad de analizar toda la prueba presentada por los recurridos ante el Tribunal de Primera Instancia. En su Solicitud de Reconsideración, los peticionarios no rebaten la realidad de que los recurridos lograron satisfacer los requisitos del Art. 28 y de su jurisprudencia interpretativa. Nos reiteramos en nuestro análisis de la transcripción de las vistas evidenciarias, contenido en nuestro Voto Particular, págs. 10-15.

Finalmente, como pudo apreciarse en nuestro Voto Particular previo, la determinación de proveer no ha lugar al recurso de *certiorari*, presentado por los peticionarios, estuvo basada primordialmente en la letra clara de la ley aplicable, su jurisprudencia interpretativa y un detenido análisis de la transcripción de la prueba ante el Tribunal de Primera Instancia.

Una vez emitimos nuestro dictamen, a renglón seguido tomamos conocimiento judicial de acciones administrativas, realizadas por varias agencias ejecutivas de la Rama copeticionaria, contenidas en un Informe Final del Senado de Puerto Rico. Las paralizaciones y multas administrativas de las que tomamos conocimiento judicial y que, dicho sea de paso, no fueron rebatidas por la peticionaria en su Solicitud de Reconsideración, constituyen elementos válidos para adjudicar un reclamo bajo el Art. 28 y confirman la corrección del remedio

otorgado por el Tribunal de Primera Instancia.

No se trata de una mera ponencia de una agencia administrativa ante la Asamblea Legislativa. Aunque ciertamente la aludida ponencia también revela un tratamiento inconsistente en relación a este proyecto. Utilizar un informe legislativo para tomar conocimiento judicial de hechos que no han sido rebatidos por los peticionarios y que abonan a confirmar la corrección del dictamen del foro intermedio, en nada constituye una formulación de política pública. Por el contrario, representa un ejercicio de análisis válido y consistente con la adjudicación previamente enunciada.

Es por ello que una interpretación coherente de la jurisprudencia aplicable aquí discutida, nos obliga a concluir que actuó correctamente el Tribunal de Apelaciones al confirmar el dictamen del foro primario. No existen justificaciones de peso para conceder un auxilio de jurisdicción ni revocar la sentencia del Tribunal de Apelaciones. Mucho menos para conceder, en esta etapa, una vista oral que en nada aportará a la solución del caso de marras. Las consideraciones exógenas al Derecho que plantea Bioculture no me motivan a revocar un remedio provisional que protege el interés público. En atención a lo antes intimado, estoy conforme con denegar la reconsideración y la concesión de una vista oral.

III.

Por las razones anteriormente expuestas, es mi criterio que no procede expedir el auto de *certiorari* en los casos de epígrafe ni paralizar el efecto del interdicto especial emitido. En consecuencia, estoy conforme con denegar la Solicitud de Reconsideración y la Solicitud de Vista Oral.


                                    Luis F. Estrella Martínez
                                          *Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Roberto Brito Díaz; Ángel Luis Sanabria Morales; Keila Colón Rivera; José C. Rodríguez Collazo; José Enrique Cruz Mercado; Nydia Luz Rivera Laporte; Marianita Palau; Carla Capalli Rosa; Ángel Torres y People For The Ethical Treatment of Animals (PETA)<br><br>Recurridos<br><br>v.<br><br>Bioculture Puerto Rico, Inc.; Estado Libre Asociado de Puerto Rico; Administración de Reglamentos y Permisos (ARPE); Departamento de Justicia; Junta de Calidad Ambiental (JCA); Departamento de Recursos Naturales y Ambientales (DRNA); Departamento de Agricultura; Compañía de Fomento Industrial (PRIDCO); Municipio de Guayama; Ing. José Mateo Colón; e Ing. Germán Torres Berríos<br><br>Peticionarios | CC-2011-929 |

Voto particular disidente emitido por la Jueza Asociada señora PABÓN CHARNECO, al cual se une el Juez Asociado señor RIVERA GARCÍA y el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 10 de enero de 2012.

El 21 de diciembre de 2011 compareció ante nos la compañía Bioculture Puerto Rico, Inc. (en adelante Bioculture) y nos solicitó que reconsideremos la

Resolución que emitimos el 9 de diciembre de 2011. Véase *Brito Díaz y otros v. Bioculture Puerto Rico, Inc. y otros*, 2011 T.S.P.R. 185, 2011 J.T.S. 190, 183 D.P.R. ___ (2011). A su vez, peticionó que se concediera la celebración de una Vista Oral en este Tribunal para atender de manera detenida y ponderada los asuntos de Derecho que surgieron en los tres (3) votos particulares que fueron emitidos junto a nuestra Resolución.

En el día de hoy, una mayoría de miembros de este Tribunal se rehúsa a reconsiderar el resultado al que llegamos en aquella ocasión. Mi posición en cuanto al caso de epígrafe no ha cambiado. *A contrario sensu*, la muy fundamentada Solicitud de Reconsideración presentada por Bioculture es altamente persuasiva y confirma las preocupaciones que expresé en mi Voto Particular Disidente anterior. Debido a ello, me veo en la obligación de disentir nuevamente del curso decisorio seguido por este Tribunal y así hacer constar las repercusiones que tiene sobre las partes involucradas en este caso y sobre nuestro ordenamiento en general la conclusión a la que llega el Tribunal.

I

A. **Legitimación Activa y el precedente de *Fund. Surfrider y otros v. A.R.Pe., infra*.**

Como muy bien señala Bioculture, nuestra Resolución de 9 de diciembre de 2011 debe ser reconsiderada porque su

efecto neto es modificar la normativa sobre legitimación activa que esbozamos en *Fund. Surfrider y otros v. A.R.Pe.*, 178 D.P.R. 563 (2010). Como bien apunta Bioculture, la desviación del *ratio decidendi* de ese caso es tan marcada que se llega al punto de hacer prevalecer la Opinión Disidente emitida en aquella ocasión.

En el Voto Particular de Conformidad del distinguido hermano Juez Asociado Señor Martínez Torres se le reconoció legitimación activa a solo uno (1) de los múltiples demandantes en los casos de epígrafe. Al colindante José Rodríguez Collazo se le reconoció su capacidad para entablar el pleito de autos porque, según el Voto de Conformidad "este colindante del proyecto testificó que no ha podido vender parte de su propiedad debido a que tres compradores potenciales se arrepintieron tras enterarse de la construcción de las instalaciones de Bioculture. . . Con esta declaración incontrovertida, el señor Rodríguez Collazo demostró tener un daño económico claro, real, concreto y específico". Voto Particular de Conformidad, Martínez Torres, J. pág. 13. Sin embargo, como nos señala Bioculture:

> [a]l reconocerle legitimación activa a Rodríguez Collazo, exclusivamente basado en el escueto testimonio de [e]ste a los efectos de que unos supuestos compradores —no identificados— rehusaron comprarle un supuesto desarrollo de viviendas que alegadamente [e]ste tenía planeado, se entra en una insalvable inconsistencia con el precedente recientemente adoptado en Fundación

Surrider v. ARPE, supra. Solicitud de Reconsideración, pág. 2.

Comparto esa conclusión. Si comparamos las alegaciones del colindante-demandante Collazo en el caso de autos y del vecino-demandante señor Leon J. Richter en el caso de *Fund. Surfrider y otros v. A.R.Pe.*, *supra*, surge con meridiana claridad que es inconsistente reconocerle legitimación activa a uno y a otro no.

Peor aún, aunque asumiéramos que el señor Collazo demostró con sus alegaciones sufrir un **daño claro, específico y no especulativo** en los casos de epígrafe, mucho más claro resultaba el alegado daño del señor Richter en *Fund. Surfrider y otros v. A.R.Pe., supra*. En ese caso, Richter alegó:

> (1) que reside 'en el barrio Ensenada de Rincón, cerca del proyecto objeto del caso de autos', (2) que actualmente está afectado por un problema de distribución de agua, (3) que "entiende que este problema se agravará con el aumento de consumo que significa este proyecto", (4) "que sus intereses se verán afectados porque este tipo de desarrollo aumenta la densidad poblacional y por lo tanto rompe la armonía y altera las características del vecindario".

*Fund. Surfrider y otros v. A.R.Pe., supra*, pág. 587.

En cuanto a esas alegaciones, concluimos que:

> [e]l hecho de que [Richter] viva en el Barrio Ensenada no significa que resida en el mismo vecindario en d[o]nde estará ubicado el proyecto, pues un barrio puede ser tan extenso que contenga varios vecindarios. De hecho, ni siquiera se alegó que el peticionario reside en el mismo vecindario d[o]nde se desarrollaría el proyecto.

Por último, el señor Richter alega que se verá afectado por la decisión administrativa, ya que "entiende" que el alegado problema de distribución de agua se intensificará con la construcción del proyecto. **Ésta es una alegación especulativa y conclusoria.** Además, como no se alegó la ubicación de la residencia ni la proximidad de ésta respecto al predio del proyecto, no podemos saber si el sector donde está ubicada la residencia se suple de la misma toma de agua que el proyecto. **Estamos ante meras opiniones y conclusiones de los peticionarios sin datos que las sustenten.**

Ante la insuficiencia de una base fáctica, no podemos determinar si el copeticionario, el señor Richter, sería afectado por la determinación administrativa.

*Fund. Surfrider y otros v. A.R.Pe., supra*, págs. 588 - 589.

Contrastemos estas expresiones con lo alegado por el colindante-recurrido señor Collazo en los casos de epígrafe. Este se limitó a alegar en una vista evidenciaria que varios compradores de unos terrenos que estaba desarrollando se arrepintieron del negocio al enterarse de la construcción de Bioculture en Guayama. En ningún momento se identifican estos compradores, ni se nos indica a cuánta distancia de la construcción de Bioculture están estos terrenos desarrollados. Ante este parco testimonio, ¿No estamos ante una alegación **especulativa y conclusoria**? ¿No estamos ante meras **opiniones y conclusiones sin datos que las sustenten**?

Por otra parte, a diferencia del señor Richter, el colindante-recurrido Collazo ni siquiera vive en el mismo barrio en el cual Bioculture construía sus instalaciones.

A su vez, **testificó que el proyecto de construcción queda entre once (11) y veinte (20) minutos en carro de su propiedad.** Véase Solicitud de Reconsideración, págs. 2-3. ¿No son estos factores que deberíamos tomar en consideración para precisamente concluir que el colindante carecía de legitimación activa?

Como nos señala Bioculture en su Solicitud de Reconsideración, si se sostiene que la alegación *self-serving* que realizó el señor Collazo en la vista evidenciaria fue suficiente para reconocerle legitimación activa, estaríamos aplicando directamente la Opinión Disidente que se emitió en *Fund. Surfrider y otros v. A.R.Pe., supra*. En específico, expresó la compañera Jueza Asociada señora Fiol Matta en aquella ocasión:

> ¿[D]e qué nos sirve saber el lugar exacto de la residencia del señor Richter si nadie puso en duda su condición de vecino del lugar del proyecto? ¿Para corroborar si el daño que alega sufrir era cierto? ¿Y si hubiéramos conocido el lugar exacto, de qué manera podría este Tribunal confirmar los daños sufridos por el señor Richter? ¿Cuán lejos es lejos para demostrar que los abastos de agua se verían afectados? No podemos exigir prueba pericial sobre esto para el propósito de evaluar la legitimación activa.

*Fund. Surfrider y otros v. A.R.Pe., supra*, pág. 599.

Lamentablemente, al negarse a reconsiderar nuestra Resolución de 9 de diciembre de 2011, este Tribunal deja huérfana de contestación la interrogante de cómo es posible que el señor Richter no tuviera legitimación activa en *Fund. Surfrider y otros v. A.R.Pe., supra,* pero

el señor Collazo en los casos de epígrafe sí la ostenta. ¿Sobrevive *Fund. Surfrider y otros v. A.R.P.e., supra,* en su totalidad? ¿O su *ratio decidendi* se encuentra en algún punto entre la Opinión Mayoritaria y la Opinión Disidente de ese caso?

Por mi parte, dejo meridianamente claro que seguiré aplicando el precedente de *Fund. Surfrider y otros v. A.R.Pe., supra*, **según fue decidido originalmente.** Para que un demandante pueda alegar que un proyecto de construcción lo ha afectado tendrá que demostrar un daño claro, específico y no especulativo. De lo contrario, estaríamos permitiendo que alegaciones imprecisas, generales, especulativas y carentes de base fáctica abran las puertas para que cualquier persona impugne un proyecto de construcción que no sea de su agrado. Las bondades y desventajas de un proyecto de construcción no pueden ser cuestionadas en los foros judiciales por demandantes sin legitimación activa. Esa es la norma de *Fund. Surfrider y otros v. A.R.Pe., supra*,  y así la continuaré aplicando.

**B. El Art. 31 de la Ley Núm. 76, 23 L.P.R.A. sec. 72c.**

En su Voto de Conformidad en nuestra Resolución de 9 de diciembre de 2011, el compañero Juez Asociado señor Martínez Torres expresó que Bioculture estaba impedida de continuar construyendo su proyecto en Guayama porque:

> En el caso que nos ocupa, Roberto Brito Díaz y otros presentaron una apelación ante la J.A.C.L. dentro del término de 30 días que disponía el

> Art. 31 de la Ley Núm. 76, supra. Con ello, se suspendió la eficacia del permiso concedido. No es el Tribunal de Primera Instancia el que invalidó el permiso concedido. Su vigencia estaba suspendida por mandato del Art. 31 de la Ley Núm. 76, íd. El tribunal se limitó a hacer cumplir ese mandato y evitar una construcción ilegal, como disponía el Art. 28, *supra*.

*Brito Díaz y otros v. Bioculture-Puerto Rico, Inc. y otros, supra*, Voto Particular de Conformidad de Martínez Torres, J., pág. 6. En aquel entonces, no consideré necesario atender los señalamientos en cuanto a ese articulado que fueron esbozados en el Voto de Conformidad. La razón es sencilla. ¿Para qué expresarme en cuanto a la alegada violación de un artículo que ningún tribunal ni ninguna parte en el pleito habían atendido, más aún cuando concluí que los demandantes-recurridos carecían de legitimación activa para incoar el pleito? ¿Si los demandantes-recurridos no poseían llave para entrar al foro judicial, por qué expresarnos en cuanto a fundamentos para emitir un *injunction*?

Sin embargo, en su Solicitud de Reconsideración Bioculture levanta excelentes argumentos de Derecho que cuestionan seriamente lo expresado en el Voto Particular de Conformidad del hermano Juez Asociado señor Martínez Torres. A continuación, cito *in extenso* los argumentos esbozados por Bioculture:

> Según el Voto de Conformidad, el Artículo 31 de la Ley Número 76 del 24 de junio de 1975, según enmendado, 23 L.P.R.A. § 72c, y su jurisprudencia interpretativa creaban una especie de interdicto

ipso jure que paralizaba la eficacia del permiso apelado, hasta tanto la JACL resolviese los méritos del recurso. . . Sin embargo eso no es lo que surge del texto del citado artículo, ni puede ser así interpretado.

El inciso "a" del Artículo 31, disponía en lo pertinente, que "[u]na vez radicado un escrito de apelación ante la Junta de Apelaciones y notificado el mismo por el apelante, **el organismo o funcionario de cuya decisión se apela**, suspenderá **todos los procedimientos ante sí**, relativos a la actuación, determinación o resolución de la cual se apela"(énfasis suplido). Surge pues de la letra clara del estatuto que la paralización aludida va dirigida contra la agencia cuya decisión se apela (en este caso ARPE) y **no contra el tenedor del permiso**. Más aún, lo que queda paralizado es **el procedimiento**, es decir, la expedición de dictámenes posteriores relacionados con la actuación que se apela y no el permiso expedido. Véase ARPE v. Ozores Pérez, 116 D.P.R. 822 (1986) (Per Curiam), donde esta Honorable Curia indicó claramente que "[e]l Art. 31 (23 L.P.R.A. sec. 72c) tenía el **único efecto** de suspender **ante la agencia** los procedimientos relativos a la determinación de la cual se apeló" (énfasis suplido).

Del texto estatutario no surge que el permiso apelado quede paralizado o que el concesionario de dicho permiso vea sus derechos como tal limitados de manera alguna ante una apelación administrativa o durante el término de la apelación.
. . .
El caso de Fuertes Guillermety v. ARPE, 130 D.P.R. 971 (1992), citado a la página 5 del Voto de Conformidad aquí discutido, versa en torno a la validez de un **permiso de uso** expedido mientras estaba pendiente una apelación ante la JACL contra un **permiso de construcción**. Id. a la pág. 981-982. Fuertes Guillermety de ninguna manera resuelve que el tenedor del permiso de construcción no podía continuar construyendo por el mero hecho de que se había interpuesto una apelación ante la JACL como se indica en el Voto de Conformidad aludido. Lo mismo en Plaza las Américas, Inc. v. N & H, S.E./Tiendas Sedeco, 166 D.P.R. 631 (2005). Allí ARPE había expedido el permiso en cuestión **luego de apeladas ante la JACL** "una Resolución para aprobar un anteproyecto de construcción" y una autorización de la

"preparación de los planos de construcción correspondientes para la remodelación de un edificio cercano al centro comercial Plaza Las Américas". Id. a las págs. 638-639. (énfasis suplido). Ante tales circunstancias, diferentes a las del caso de autos, el Tribunal, correctamente, ordenó la paralización de la construcción de Sedeco, al amparo del Artículo 31, porque el permiso de construcción había sido expedido **después** de radicado el recurso de apelación administrativa. La cronología en nuestro caso es distinta a la de Fuertes Guillermety y a la de Plaza las Américas. El permiso al amparo del cual [Bioculture] construía fue expedido por ARPE **previo** a la apelación. Distinto hubiese sido el caso si, por ejemplo, ARPE hubiese expedido el permiso de uso mientras estaba pendiente la apelación contra el permiso de construcción. Este no es nuestro caso. ARPE, en efecto, suspendió los procedimientos relacionados al permiso de construcción y no incurrió en procedimientos ulteriores, por lo cual el Artículo 31 no fue vulnerado de manera alguna y la construcción llevada a cabo por [Bioculture] era legal.

Solicitud de Reconsideración, págs. 5-6.

Ante los señalamiento esbozados por Bioculture, no debe sorprendernos que ni el Tribunal de Primera Instancia, ni el Tribunal de Apelaciones, ni los demandantes-recurridos en el caso de epígrafe utilizaran el Art. 31 de la Ley Núm. 76, *supra*, para paralizar la construcción de Bioculture o para sostener que su permiso de construcción era inválido.

No comparto la apreciación del compañero Juez Asociado señor Martínez Torres que el artículo aludido invalida el permiso de construcción de Bioculture. Más aún, no comprendo cómo un tribunal puede paralizar un proyecto de construcción al amparo del Art. 31 de la Ley

Núm. 76, *supra*, si los demandantes carecen de legitimación activa, a menos que, como expone Bioculture, ese artículo creaba un interdicto que operaba *ex propio vigore*. No comparto esa interpretación estatutaria.

## C. La utilización de Informes Legislativos como herramientas de adjudicación

Finalmente, la Solicitud de Reconsideración presentada por Bioculture cuestiona de manera fundamentada las razones por las cuales se citaron Informes y Ponencias presentadas ante la Rama Legislativa en el Voto Particular de Conformidad del Juez Asociado señor Estrella Martínez.

En específico, sostiene Bioculture que:

> Entendemos respetuosamente que el Voto Particular de Conformidad se aparta del análisis de criterios jurídicos para adoptar las determinaciones de una Comisión Senatorial que evidentemente está viciada en contra del proyecto de [Bioculture].
> . . .
> M[á]s a[ú]n, este Honorable Tribunal ha reconocido en múltiples ocasiones la limitada facultad de los tribunales apelativos sobre la utilización de evidencia no admitida en el foro primario. A tales efectos, es impactante la utilización, por este Ilustrado Foro, de un informe aprobado por el Senado de Puerto Rico – que no fue ni siquiera ofrecid[o] en evidencia- como elemento fundamental del Voto Particular de Conformidad. . . La utilización del referido informe del Senado, que no es parte del récord judicial, en apoyo de un Voto Particular de Conformidad envía un mensaje equivocado de práctica apelativa.

Solicitud de Reconsideración, págs. 10-11.

Nuevamente, comparto las preocupaciones que levanta Bioculture en su Solicitud de Reconsideración. Como

expresé en mi anterior Voto Particular Disidente "cuando ante este foro comparece una parte, y argumenta que en Derecho procede que se falle a favor suyo, no podemos utilizar fuentes que van más allá del Derecho para resolverle en contra. Estas fuentes contaminan la sagrada labor constitucional de este Tribunal". *Brito-Díaz y otros v. Bioculture-Puerto Rico y otros*, *supra*, Voto Particular Disidente, pág. 16. A su vez, más que un mensaje equivocado de práctica apelativa, la utilización de los aludidos informes envía un mensaje equivocado a la ciudadanía en general, ya que confunde las fronteras entre lo legislativo y lo jurídico.

Finalmente, el compañero Juez Asociado señor Estrella Martínez expresó en su Voto Particular de Conformidad que al Art. 28 de la Ley Núm. 76, *supra*, no le es de aplicación la norma de legitimación activa según esbozada en *Fund. Surfrider y otros v. A.R.Pe.*, *supra*. En particular, el Juez Estrella Martínez entiende que ese artículo crea una situación especial en donde los demandantes no tienen que demostrar haber sufrido un daño claro y específico para lograr acceso al foro judicial. Como señala Bioculture, si se sostiene esa posición "[s]e daría entonces un extraño fenómeno de que los demandantes estaban legitimados para obtener un remedio interdictal provisional ante el TPI pero no están legitimados para impugnar el permiso concedido a [Bioculture] ante el foro

con facultad para adjudicar la controversia de manera definitiva". Solicitud de Reconsideración, pág. 9.

II

En conclusión, este Tribunal debió reconsiderar el resultado al cual llegamos en *Brito-Díaz y otros v. Bioculture Puerto Rico, Inc. y otros, supra*. Me preocupan seriamente las repercusiones de ese resultado, tanto para nuestra normativa de legitimación activa, como para nuestra imagen como Foro interpretativo final del Derecho en Puerto Rico. Un caso tan complejo como el de epígrafe, el cual presenta situaciones de alto interés público y que causó la publicación de tres (3) votos con posturas de Derecho diversas y encontradas, **como mínimo** ameritaba la concesión de una Vista Oral por parte de este Tribunal. De esa forma, hubiéramos estado en posición de atender detenidamente un caso en el cual surgieron situaciones de Derecho noveles y complejas en el seno de este Foro.

Particularmente, debemos recordar que en ocasiones recientes hemos reconocido el valor intrínseco de la celebración de vistas orales. En *In re: Reglamento del Tribunal Supremo*, 2011 T.S.P.R. 174, pág. 100, el compañero Juez Asociado señor Martínez Torres expresó que:

> Las vistas orales son un mecanismo valioso para la deliberación colegiada en todo foro apelativo. Por eso, el nuevo Reglamento enfatiza y revisa el procedimiento para que el Tribunal pueda celebrar más vistas orales en casos meritorios. Ese es un reclamo que la comunidad ha hecho por décadas.

¿Qué mejor caso para inaugurar la nueva política de puertas abiertas en este Foro que uno como este que causó tanta división entre los compañeros jueces?

Por todo lo anteriormente expuesto, mi conciencia me dicta que debo disentir nuevamente. A tales efectos, declararía Ha Lugar tanto la Solicitud de Reconsideración como la Solicitud de Vista Oral.

Mildred G. Pabón Charneco
Jueza Asociada